**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


WILLIAM J. PLATEK, JR.,       )
      )
      Plaintiff,       )       Civil Action No. 12-1607
      )
      v.       )       Judge Cathy Bissoon
      )
SAFEGUARD PROPERTIES INC.,       )
*et al.*,       )
      )
      Defendants.       )


## MEMORANDUM AND ORDER

### I. MEMORANDUM

For the reasons that follow, Defendant HSBC's Motion to Dismiss (Doc. 26) will be granted in its entirety, and Defendant Safeguard's Motion to Dismiss (Doc. 25) will be granted regarding all of Plaintiff's claims, except for conversion.

The parties are well-acquainted with Plaintiff's factual averments and the law. As to the claims against Safeguard under the FDCPA, the Court agrees with and hereby adopts the reasoning in Alqaq v. CitiMortgage, Inc., 2014 WL 1689685, *3-4 (N.D. Ill. Apr. 29, 2014). The Alqaq Court surveyed various, conflicting court decisions regarding whether the property preservation activities undertaken by Safeguard fall within the provisions of the FDCPA. That court answered in the negative, and held, under materially analogous circumstances, that Safeguard's alleged conduct "was incidental to debt collection and was not dispossession or disablement of property to enforce a security interest within the purview of [the Act]." *See id.* (citing authority). This Court agrees, and particularly is persuaded by the Alqaq Court's recognition that federal regulations, state law and municipal ordinances often impose duties on

mortgagees to secure and protect foreclosed property from deterioration. *Id.* at *3. In addition to potentially placing mortgagees in a situation of "damned if you do, damned if you don't," deeming the fulfillment of preservation duties as "debt collection" misconstrues the "principal purpose" of such activity, and, thus, falls outside the scope of the FDCPA. *See id.*

As evinced by the split of authority acknowledged in <u>Alqaq</u>, the above conclusions are not beyond reasoned debate. Nevertheless, given the gravamen of Plaintiff's complaints, namely that he was dispossessed of personal property as a result of Safeguard's post-foreclosure "winterizing," the Court cannot help but be left with the impression that Plaintiff's counsel is attempting to "federalize" putative state law claims or violations, whether civil or criminal, regarding the deprivation of, or interference with, personal property.[1] This is particularly true given Plaintiff's candid admissions that he was, for years, "unable to make the monthly payments" on his mortgage (the purported "debt," under the FDCPA, being collected), that he defaulted on the mortgage, and that the foreclosure proceedings against him "progressed normally" to an uncontested entry of judgment in the mortgagee's favor. *See* Am. Compl. (Doc. 24) at ¶¶ 13(b), 19.

While Plaintiff's attempted invocation of a federal statute is neither improper nor unusual (given the prospect of statutory damages and attorney's fees), the undersigned believes that the above circumstances should, and do, inform the Court's evaluation of his claims under the FDCPA. These observations, however, are limited to the specific facts and allegations in this case.

---

[1] *Cf. Impact of TCPA & FDCPA on Debt Collection*, 66 CONSUMER FIN. L. Q. REP. 15, 23 (2012) (arguing that "[t]he hypertechnicality of the requirements [in the FDCPA], as often interpreted, interjects a complex federal law regime into seemingly routine behavior traditionally governed by more common-sense state and common law principles," and questioning "whether there is an accompanying, proportional benefit to the consumer").

In any event, and as a wholly independent basis for dismissal, the undersigned expressly holds that Safeguard's Motion to Dismiss will be granted based on the reasoning in Alqaq.

As to HSBC, Plaintiff's allegations regarding this Defendant, hyperbole aside, boil down to the fact that it hired Safeguard to perform property preservation services. Any remaining allegations against HSBC fail for the same reasons stated above, and, more generally, the Court does not believe that HSBC can be held liable merely because it retained Safeguard as so described.[2]

Turning to Plaintiff's state law claims,[3] his averments regarding intentional infliction of emotional distress ("IIED"), brought against both Defendants, will be dismissed. Plaintiff is required to show conduct that is "so outrageous in character, and so extreme in degree," that it goes "beyond all possible bounds of decency, and [can] be regarded as atrocious, and utterly intolerable in a civilized community." Kasper v. Bucks County, 2013 WL 563342, *5 (3d Cir. Feb. 15, 2013) (applying Pennsylvania law, citation to quoted sources omitted). Defendants' conduct does not rise to this level under any reasonable reading of the Amended Complaint.

---

[2] HSBC has not demonstrated its entitlement to dismissal, at the 12(b)(6) stage, based on the alternative theories presented in its brief. See HSBC's Br. (Doc. 27) at 5-7 (arguing that Plaintiff has failed to identify "debt" as defined under FDCPA) and id. at 7-9 (arguing that HSBC is not "debt collector" because it acted as creditor attempting to collect its own debt). As to the issue of "debt," HSBC has not persuaded the Court that its status as a foreclosure judgment-holder modifies the analyses under the FDCPA. See id. at 5 n.2 (quoting statute's definition of "debt," which includes obligation to pay money "whether or not such obligation has been reduced to judgment") (emphasis added). Regarding HSBC's suggestion that it was a "creditor" because it began "servicing" Plaintiff's mortgage before he defaulted, this does not speak to the relevant issue, namely, whether HSBC took ownership of the mortgage before the default. See Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 403-404 (3d Cir. 2000) ("an assignee of an obligation is not a 'debt collector' if the obligation is not in default at the time of the assignment," but, conversely, "an assignee may be deemed a 'debt collector' if the obligation is already in default when it is assigned") (citations omitted, emphasis added).

[3] Although Plaintiff previously sought to invoke the Court's supplemental jurisdiction, his Amended Complaint alleges diversity jurisdiction, and Defendants do not dispute that such jurisdiction may attach.

As referenced above, Plaintiff concedes that he defaulted on his mortgage; he did not contest the foreclosure judgment entered against him; and he was not residing at the premises during the time in question. *See* discussion *supra, and* Am. Compl. at ¶¶ 20-21. In essence, the conduct of which Plaintiff complains may be reduced to allegations that Safeguard was unresponsive to Plaintiff's telephone calls, wherein he "angrily told them the property was not abandoned" and that Safeguard was "not entitled to enter his home." *See id.* at ¶¶ 29-32. Although the Court does not mean to diminish Plaintiff's grievances, the circumstances surrounding them are a far cry from the ones found in support of an actionable claim for IIED.

Next, Plaintiff's claims of civil conspiracy, again stated against both Defendants, also will be dismissed. In order to support such a claim, Plaintiff is required to identify an actionable underlying tort. *See* Majewski v. Fischi, 2010 WL 1220970, *5 (3d Cir. Mar. 30, 2010) (holding same under Pennsylvania law, citations omitted). The Amended Complaint fails to articulate one, at least with any meaningful certainty. *Compare* Am. Compl. at Count IV (claiming that HSBC "hired" Safeguard to "break into [Plaintiff's] residence and appropriate his personalty") *with* Nicolo v. Patterson Belknap Webb & Tyler, LLP, 2014 WL 1248034, *1 (W.D. Pa. Mar. 26, 2014) (under Rule 12(b)(6), court is not required to accept "legal conclusions cast in the form of factual allegations") (citation to quoted source omitted). To the extent that the pleadings allege concerted action, moreover, such allegations are limited to claims that Defendants acted together (or, more specifically, that HSBC hired Safeguard) to violate the FDCPA. *See, e.g., id.* at ¶¶ 9, 36-38 (alleging that Safeguard entered property management agreement with HSBC, and stating, in conclusory fashion, that HSBC so employed Safeguard to enforce its "security interest" in real property). Plaintiff has failed to identify legal authority supporting the proposition that a purported violation of the FDCPA, alone, may form the

substantive basis for a state-law civil conspiracy claim,[4] and, in any event, the Court already has determined that Plaintiff's FDCPA claims are subject to dismissal. Otherwise, Plaintiff's limited and conclusory allegations of joint-action fall well short of the plausibility standards in *Iqbal/Twombly*, as relates to the various elements of civil conspiracy. *See generally* Woodward v. ViroPharma Inc., 2013 WL 1485110, *11 (Pa. Super. Apr. 3, 2013) (among other things, civil conspiracy requires allegations regarding nature of alleged unlawful act, nature of unlawful means or purpose, allegations of overt action in furtherance of conspiracy and statement of goals with "convenient certainty"); *see also* Thomas v. U.S. Airways, 2014 WL 1910245, *5 (E.D. Pa. May 13, 2014) ("[t]he sufficiency of a claim for civil conspiracy under state law, brought in federal court, is governed by . . . the [f]ederal [pleading standards]," and "[c]onclusory allegations of 'concerted action,' without allegations of fact that reflect joint action, are insufficient") (citation to quoted sources omitted).[5]

Last is Plaintiff's conversion claim, brought against Safeguard only. As the Court previously noted, this theory would appear to present the most common-sense avenue for relief. *Cf.* Sept. 25th Order ("Plaintiff's personal effects did not disappear into thin air, and, assuming the items cannot be returned," it would seem appropriate that Safeguard may be liable for their disposal). Under Pennsylvania law, "conversion is widely understood as the deprivation of another's right of property in, or use or possession of, chattel, or other interference therewith, without the owner's consent and without lawful justification." PTSI, Inc. v. Haley, 71 A.3d 304, 314 (Pa. Super. 2013) (citation to quoted source omitted). Within the context of Rule 12(b)(6),

---

[4] *Cf.* Accurso v. Infra-Red Servs., Inc., 2014 WL 2218128, *15 (E.D. Pa. May 28, 2014) ("[a] claim of civil conspiracy cannot rest solely upon the violation of a federal statute for which there is no corresponding[, viable cause] of action") (citation to quoted sourced omitted).

[5] Plaintiff has not requested leave for further amendment, most likely because the Court already has determined that none would be granted. *See* Order dated Sept. 25, 2013 (Doc. 21) at 3 & n.1 (explaining that Plaintiff already has enjoyed ample opportunity for amendment).

Safeguard has not taken the position that Plaintiff consented to the disposal of his personal property, nor does Safeguard claim that it had lawful justification to dispose of it. Rather, Safeguard argues that Plaintiff's allegations are insufficient because he did not, prior to filing suit, demand a return of the property. *See* Safeguard's Br. (Doc. 28) at 14-15. To the extent that Pennsylvania law references a "demand," the requirement has been applied context-specifically, and Plaintiff's counsel has raised sufficient questions as to whether the cases cited by Safeguard should control. *See* Pl.'s Opp'n Br. (Doc. 31) at 6-7 (distinguishing two cases cited in Defendant's brief). Furthermore, Safeguard has not convinced the Court that Plaintiff's pre-deprivation complaints regarding property disposal are immaterial to the conversion analysis. *Cf.* Safeguard's Reply Br. (Doc. 33) at 3 (arguing same); *but compare* Am. Compl. at ¶¶ 28-29, 31 (claiming that Safeguard's door "stickers" indicated that, *unless Safeguard heard otherwise from homeowner*, personal property in home would be removed; and alleging that Plaintiff repeatedly telephoned Safeguard to vociferously oppose removal of his personal property) *with* Norriton East Realty Corp. v. Central-Penn Nat'l Bank, 254 A.2d 637, 638-39 (Pa. 1969) (listing four specific sub-theories that may support claim of conversion, and citing standards regarding *mens rea* of alleged tortfeasor).

Safeguard has failed to demonstrated, at this juncture, that Plaintiff cannot state a plausible claim for conversion. If and as appropriate, Safeguard may revisit its arguments on summary judgment, once the facts in this case have been discovered and the parties' legal theories and arguments have been fleshed out.[6]

Consistent with the foregoing, the Court hereby enters the following:

---

[6] To be clear, the Court finds that the Amended Complaint contains sufficient allegations regarding conversion to satisfy the federal notice pleading standards and *Iqbal/Twombly*.

## II. <u>ORDER</u>

Defendant HSBC's Motion to Dismiss (**Doc. 26**) is **GRANTED**, and said Defendant is

DISMISSED from the lawsuit.  Defendant Safeguard's Motion to Dismiss (**Doc. 25**)

is **GRANTED** in all respects, save Plaintiff's claim of conversion.

IT IS SO ORDERED.


June 19, 2014                                       s\Cathy Bissoon
                                                         Cathy Bissoon
                                                         United States District Judge

cc (via ECF email notification):

All Counsel of Record